**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 28 2013, 7:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HEATHER RENAE INGLE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1211-CR-901 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable J. Richard Campbell, Judge
Cause No. 29D04-1109-CM-13939

**June 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Heather Renae Ingle appeals her convictions for class A misdemeanor operating while intoxicated endangering a person ("OWI"), class A misdemeanor resisting law enforcement, and class B misdemeanor disorderly conduct. On appeal, she argues that the trial court erred in denying her motion for mistrial after a State's witness testified that Ingle had alcohol in her blood when there was no evidence of that. She also argues that the evidence is insufficient to support her conviction for class A misdemeanor OWI. We conclude that the trial court did not err in denying her motion for mistrial because its admonishment to the jury was an adequate remedy for the complained-of testimony. We also conclude that the circumstantial evidence was sufficient to establish beyond a reasonable doubt that Ingle operated a vehicle while intoxicated endangering a person. Therefore, we affirm.

**Facts and Procedural History**

On November 19, 2010, at 1:00 a.m., Carmel Police Officer Timothy Byrne was traveling southbound on Keystone Avenue from 126th Street in Hamilton County when he observed a silver or grey 1999 Nissan Maxima stopped with its lights off in the right-hand turn lane. Officer Byrne thought there could be a stranded motorist, abandoned vehicle, or impaired driver, so he stopped near the vehicle and activated his emergency lights. He approached the vehicle on foot and saw Ingle lying in the back seat. He touched the hood of the car and noticed that it was still warm. He looked in the vehicle and saw that although the car was not running, the keys were still in the ignition and the car was in drive. The driver's

2

side door was unlocked. Officer Byrne attempted to wake Ingle up. He raised his voice, pushed her on the shoulder, and shook her. Finally, she woke up and got out of the car.

Officer Byrne asked Ingle what was going on and why she was there. She stated that she was trying to get home to Marion from Kokomo where she worked at a bar and had gotten bad directions from another officer. She also said that she had gotten tired and pulled over to the side of the road because she was lost and she was waiting for her boyfriend to come pick her up. Officer Byrne asked Ingle if she knew where she had parked and explained to her that she had parked in the middle of the turn lane. Ingle said that she thought she was on the shoulder of the road. Officer Byrne noticed that Ingle's speech was slurred and her eyes were glassy and bloodshot, and he smelled the odor of alcohol. He asked her if she had been drinking, and she said that she had not. Officer Byrne suspected that Ingle might be an impaired driver and decided to continue his investigation at the Carmel Police Station's sally port, which is a well-lit, safe environment.

After transporting Ingle to the Carmel Police Station, Officer Byrne attempted to conduct three standardized field sobriety tests. Ingle failed the horizontal gaze nystgamus test and the one-leg stand test. Officer Byrne was unable to administer the nine-step walk and turn test because Ingle told him she had suffered a head injury from a previous motorcycle accident and could not walk a straight line.

Officer Byrne handcuffed Ingle and read her the implied consent advisement. Ingle said that she would take a breath test. Officer Byrne said that he was offering a blood test because he believed that she was under the influence of something other than alcohol or in

3

addition to alcohol. Ingle said, "[Y]ou are not taking my f**king blood." Tr. at 123. Officer Byrne called the prosecutor to obtain a search warrant for a blood draw and transported Ingle to Riverview Hospital. Once at the hospital, Ingle became belligerent and uncooperative. She screamed, banged her head on the plexiglass partition in the police car, and refused to exit the car. Riverview security officers took her out of the car and carried her into the hospital, and she continued to scream and curse.

Officer Byrne had not yet obtained a search warrant, and he placed Ingle in a holding cell. Ingle slipped out of the handcuffs and began banging on the plexiglass window. Officer Byrne and another officer went into the holding cell to gain control of Ingle. Ingle fought the officers' attempts to place her in handcuffs. Officer Byrne told her that she needed to calm down or she would be charged with disorderly conduct and resisting law enforcement. Ingle did not calm down. Officer Byrne obtained the search warrant, and a nurse drew blood samples from Ingle. Officer Byrne then transported Ingle to the jail, and Ingle again resisted handcuffing and had to be carried, kicking and screaming, to the police car for transport.

The Indiana State Department of Toxicology tested Ingle's blood samples and reported the presence of benzodiazepines, a class of drugs that are central nervous system depressants used to treat seizure disorders, insomnia, anxiety, and depression. *Id*. at 212. The benzodiazepines detected were clonazepam and its primary metabolite 7-aminoclonazepam, at a total concentration of fifty nanograms per milliliter. State's Ex. 4. These levels are in the therapeutic range, which is up to eighty nanograms per milliliter. Tr.

at 211. However, the level of benzodiazepine in Ingle's blood was "consistent with explaining the symptoms of impairment" that she exhibited. *Id*. at 227. The toxicology report showed no evidence of the active component of marijuana, but it indicated the presence of an inactive marijuana metabolite, delta-9 carboxy THC. State's Ex. 4; Tr. at 235.

The State charged Ingle with class A misdemeanor OWI, class A misdemeanor resisting law enforcement, class B misdemeanor disorderly conduct, and class C misdemeanor operating a vehicle with a schedule I or II controlled substance (marijuana) or its metabolite in the body. A jury found Ingle guilty as charged. The trial court did not enter judgment of conviction for the class C misdemeanor because it found that it was included in the class A misdemeanor OWI conviction.

Ingle appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

*I. Denial of Motion for Mistrial*

At trial, Dr. Michael Kriger, the Department of Toxicology's chief forensic toxicologist, testified for the State. The prosecutor asked Dr. Kriger whether Ingle's blood was tested for alcohol, and Dr. Kriger responded that her blood was tested for alcohol and that alcohol was detected at a low concentration. Tr. at 213. The following colloquy followed:

> Q. Does alcohol have to be at a higher concentration to obtain the effect that you described?
>
> A. Alcohol can cause impairment as low as between .03 and .05. Despite the legal limit of .08 that is a legal switch that gets turned on that says once you reach that you are presumed to be intoxicated. Those that are

5

not tolerant to alcohol may experience intoxication at a much lower concentration.

Q.  And (inaudible) low levels of alcohol will it produce an interaction with benzodiazepines?

A.  Yes. Any amount of alcohol present, even in and of itself is not necessarily causing intoxication. There is a competition reaction going on in the brain at their same receptor sights [sic] and its [sic] enhancing the effect of the benzodiazepine drug itself.

*Id*. at 214.

On cross-examination, defense counsel asked Dr. Kriger why he said that there was alcohol in Ingle's blood when the toxicology report showed positive results for benzodiazepines and the metabolite of marijuana. Dr. Kriger replied, "I can review the case and show you where there were trace amounts of alcohol." *Id*. at 216-217. Defense counsel requested a sidebar conference and moved for a mistrial because she had not received any tests from the State indicating alcohol. The trial court excused the jury and allowed the parties to question Dr. Kriger for clarification before ruling on the motion for mistrial. Dr. Kriger testified that he had based his testimony on the portable breath test results that had not been admitted.[1] *Id*. at 221. Ingle again moved for a mistrial. The trial court denied Ingle's motion but stated that it would strike Dr. Kriger's previous opinion and instruct the jury to disregard it. The jury was brought back into the courtroom, and the trial court admonished the jury as follows:

[T]he Court has stricken any testimony of this witness [Dr. Kriger] in reference to alcohol. It has been agreed by the parties that the Department of Toxicology

---

[1] The probable cause affidavit indicated that a portable breath test had detected .03 grams of alcohol per 210 liters of breath. Appellant's App. at 59.

did no[t] test for alcohol, has no test results for alcohol. And the Court is going to instruct the jury that they are to disregard any testimony of alcohol, even trace amounts of alcohol that this witness may have testified to. Please disregard that due to lack of evidence.

Also, the Court is going to strike this witness' previous opinion in that it appeared to be based in part on an alcohol test which does not exist as far as the Court can tell. So his opinion will be stricken. The State will be allowed later on redirect to establish a new opinion. But his previous opinion is stricken. And the Court will instruct the jury to disregard this witness' opinion as to impairment.

*Id*. at 228-29.

Ingle argues that the trial court erred in denying her motion for mistrial and that the admonishment was inadequate.

Whether to grant or deny a motion for mistrial is a decision left to the sound discretion of the trial court. We will reverse the trial court's ruling only upon an abuse of that discretion. We afford the trial court such deference on appeal because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. To prevail on appeal from the denial of a motion for mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct.

A mistrial is an extreme sanction warranted only when no other cure can be expected to rectify the situation. Reversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings because a timely and accurate admonition to the jury is presumed to sufficiently protect a defendant's rights and remove any error created by the objectionable statement.

*Alvies v. State*, 795 N.E.2d 493, 506 (Ind. Ct. App. 2003), *trans.denied* (citations omitted).

Ingle argues that the trial court's admonishment was inadequate because the issue of intoxication was central to the State's case and Dr. Kriger had not mentioned alcohol to

7

defense counsel when they spoke the day before trial. We are unpersuaded that the trial court's admonishment was inadequate. The admonishment was clear and direct. The trial court not only told the jury several times to disregard Dr. Kriger's testimony regarding alcohol, but also informed the jury that the parties agreed that there were no test results for alcohol, that the jury should disregard Dr. Kriger's testimony due to lack of evidence, and that Dr. Kriger's testimony had been based on an alcohol test that did not exist. Given that the trial court so effectively conveyed to the jury that there was no evidence of alcohol, we have no difficulty concluding that the jury complied with the trial court's instruction to disregard Dr. Kriger's improper testimony. We conclude that the trial court's admonishment was adequate to insure that the improper testimony did not affect the jury's decision.[2] Accordingly, the trial court did not abuse its discretion in denying Ingle's motion for mistrial. *See Lucio v. State*, 907 N.E.2d 1008, 1011 (Ind. 2009) (stating that trial court's clear admonishment to jury not to consider inadmissible evidence and treat it as though they had never heard of it together with strong presumptions that juries follow court's instructions and admonishments cure any error severely undercut defendant's position).

## II. Sufficiency of the Evidence

Ingle also contends that the evidence was insufficient to support her conviction for class A misdemeanor OWI.

> When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. We look only to

---

[2] Ingle cites *Beauchamp v. State*, 788 N.E.2d 881 (Ind. Ct. App. 2003), in which we reversed the defendant's conviction after concluding that the trial court improperly admitted evidence that was a violation of the trial court's discovery order and Indiana Trial Rule 26(E)(1). Here, the improper evidence was stricken from the record and the jury was effectively instructed to ignore it.

the probative evidence supporting the [verdict] and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. If there is substantial evidence of probative value to support the conviction, it will not be set aside.

*Dorsett v. State*, 921 N.E.2d 529, 531 (Ind. Ct. App. 2010) (citations omitted).

To convict Ingle of class A misdemeanor OWI, the State had to prove that she (1) operated a vehicle (2) while intoxicated (3) in a manner that endangered a person. Ind. Code § 9-30-5-2(b). "Intoxicated" means under the influence of alcohol, a controlled substance, a drug other than alcohol or a controlled substance, or a combination thereof "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Ind. Code § 9-13-2-86. "[T]to operate a vehicle is to drive it or be in actual physical control of it upon a highway." *Crawley v. State*, 920 N.E.2d 808, 812 (Ind. Ct. App. 2010) (citing *Hampton v. State,* 681 N.E.2d 250, 251 (Ind. Ct. App. 1997)), *trans. denied.* To determine whether a defendant has "operated" a vehicle, we consider any evidence that leads to a reasonable inference including: "(1) the location of the vehicle when it is discovered; (2) whether the car was moving when discovered; (3) any additional evidence indicating that the defendant was observed operating the vehicle before he or she was discovered; and (4) the position of the automatic transmission." *Id*. A conviction for operating while intoxicated may be supported by circumstantial evidence. *Dorsett*, 921 N.E.2d at 531-32.

Ingle concedes that there is evidence that she operated the vehicle at some point during the evening, that she was intoxicated at the time Officer Byrne woke her up, and that

9

she operated her vehicle in a manner that endangered herself or others, but she argues that there is no evidence that "all of these elements occurred at the same time." Appellant's Reply Br. at 2. Ingle ignores the circumstantial evidence. Ingle told Officer Byrne that she was trying to get from Kokomo to Marion, had received bad directions from another officer, and got lost. Officer Byrne found that the hood of her vehicle was still warm in the middle of a November night, which supports a reasonable inference that the car had not been stopped long. The keys were still in the ignition and the car was in drive. When Officer Byrne woke Ingle up, he detected signs of intoxication such as slurred speech and glassy, bloodshot eyes. Moreover, she had stopped her vehicle with no lights on in the right-hand turn lane of a well-traveled four-lane road at 1:00 a.m. She was unaware of where she had parked and told Officer Byrne that she thought she was parked on the shoulder of the road. These facts support a reasonable inference that her judgment was impaired when she stopped her car, which endangered her life as well as those of other motorists. Ingle's argument is merely an invitation to reweigh the evidence, which we will not do. We conclude that the evidence was sufficient to support Ingle's conviction for class A misdemeanor OWI. Therefore, we affirm.

Affirmed.

ROBB, C.J., and FRIEDLANDER, J., concur.